# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

DAVID ANDREW CARTER                                              PLAINTIFF
ADC #551314

V.                          No. 5:18CV00302-DPM-JTR

DARRYL GOLDEN, Warden,
Delta Regional Unit, ADC, *et al.*                               DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

On November 29, 2018, Plaintiff David Andrew Carter ("Carter") initiated this *pro se* § 1983 action. *Doc. 2*. On December 11, 2018, the Court struck Carter's Complaint because it contained improperly joined claims, and instructed him to file a Substituted Complaint. *Doc. 4*.

On December 18, 2018, Carter filed a Substituted Complaint. *Doc. 5.* After screening that pleading, the Court dismissed Carter's claims against Defendants Warden Darryl Golden ("Golden"), Deputy Warden Linda Dykes ("Dykes") and Major Percy Arnold ("Arnold") in their official capacity, and his claim against Arkansas Division of Correction ("ADC") Director Wendy Kelley. *Docs. 7 & 8.*

The surviving claims in the Substituted Complaint allege that, while Carter was a prisoner in the Delta Regional Unit, Defendants Golden, Dykes and Arnold violated his constitutional rights by: (1) refusing to move him from a cell where he was exposed to black mold and a toilet and sink that were leaking feces and urine; and (2) refusing to provide him with cleaning supplies to remedy his exposure to those unsanitary conditions.[1]

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Material Facts Not in Dispute, arguing that all of Carter's claims should be dismissed because he failed to exhaust his available administrative remedies before initiating this action. *Docs. 17-19.* Although notified of his right to file a Response, Carter has not done so. *See Doc. 20.* Thus, the issues are joined and ready for disposition.[2]

---

[1]Carter alleges that he was only exposed to those unconstitutional conditions of confinement for five days, in November 2018.

[2]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*

## II. Discussion

### A.  ADC Procedures Governing the Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), the Court held that the PLRA's exhaustion requirement is "mandatory." *See also Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the

---

*v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The ADC provides a three-step administrative grievance process. ADC Adm. Dir. 14-16 §§ IV(E)-(G) ("AD 14-16").[3] "If no one responds at Steps One and Two – or if the responses at those steps are dissatisfactory – an inmate may appeal to the level of ADC's 'Chief Deputy/Deputy/Assistant Director' at Step Three." *Muhammad*, 933 F.3d at 997-98.

The ADC administrative grievance policy requires that, in connection with each claim, a prisoner must "*specifically name each individual involved*," and include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] *personnel involved* or witnesses." AD 14-16 §

---

[3]Defendants submitted a copy of AD 14-16 with their summary judgment papers. *Doc. 17, Ex. A-1*.

IV(C)(4) & (E)(2) (emphasis added). The grievance forms themselves contain these instructions to ensure prisoners are aware of them. AD 14-16, Att. 1 ("[B]e specific as to the complaint, date and place, name of personnel involved and how you were affected."). Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. AD 14-16 § IV(N); *see also* § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

    **B.**    **Defendants' Motion for Summary Judgment**

Carter has not contested any of the facts contained in Defendants' Statement of Material Facts Not in Dispute (*Doc. 19).* Accordingly, all of those facts are deemed to be undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Jackson v. Ark. Dep't of Educ. Vocational & Technical Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing Local Rule 56.1(c) in concluding that the plaintiff "forfeited her ability to contest the facts presented" by defendant by failing to respond to defendant's summary judgment motion).

In their summary judgment papers, Defendants contend that, before initiating this lawsuit, on November 29, 2018, Carter did not fully exhaust any grievances

5

naming them in connection with allegedly unsanitary or unsafe conditions in his cell. *Docs. 17-18.* In support of their Motion, Defendants submit: (1) an Affidavit, dated August 7, 2019, from Terri Grigsby-Brown, the ADC's Inmate Grievance Coordinator, *Doc. 17, Ex. A;* (2) Carter's Grievance No. DR-18-00724, *id., Ex. A-2;* and (3) a list of grievances that Carter filed between 2012 and June 2019, *id., Ex. A-3.*

Carter filed only one grievance that is relevant to his remaining claims: DR-18-00724. *Doc. 17, Ex. A ¶¶ 9-10; Doc. 19 ¶ 11.* On November 9, 2018, Carter filed a Step One informal resolution complaining of "bad leaking sewage from under [his] toilet/sink" and "black mold and mold from the moisture." *Doc. 17, Ex. A-2 at 1.* The grievance did not specifically name anyone. On November 11, 2018, a non-party officer responded: "Maint[enance] Request submitted about leaking toilet." The same day, Carter proceed to Step Two and filed Grievance DR-18-00724, which only stated the following: "That [repairing the sink and toilet] did not take care of the mold issue which is hazardous and not a healthy environment." *Id.*

Because Carter did not name anyone in DR-18-00724, it was procedurally flawed and subject to dismissal on that ground. However, on November 19, 2018, Defendant Dykes, as Deputy Warden, denied the grievance *on the merits*:

> You were advised in Step One of this grievance that the Maintenance Department was notified. Information received indicates that this matter was checked by the Maintenance Department on 11-14-18, and it was found to be an issue with the sink. In addition, records show that

6

>you were reassigned to another cell on 11-13-18. Therefore, your grievance is without merit. Also, you should address one complaint for each grievance.

*Id.* at 2. By "declin[ing] to enforce [the ADC's] own procedural requirements [about naming specific individuals] and opt[ing] to consider [Carter's] otherwise-defaulted claims on the merits," the procedural flaw was waived, thereby satisfying the exhaustion requirement. *Burns,* 752 F.3d at 1141; *see Hammett v. Cofield,* 681 F.3d 945, 947-48 (8th Cir. 2012) (exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits).

On November 20, 2018, Carter proceeded to Step Three and appealed the grievance to the ADC Deputy Director. In his appeal, Carter claimed he was "in an unsafe and unhealthy environment after notify[ing] staff for over 5 days before being placed in a different cell finally." *Doc. 17, Ex. A-2 at 2.*

On November 29, 2018, *before* he obtained a Step Three decision from the ADC Deputy Director, Carter initiated this action. Over five weeks later, on January 8, 2019, the ADC Deputy Director entered his Step Three decision affirming Defendant Dykes's decision denying Carter's grievance. *Id.* at 3, & Ex. A-3.

Because Carter did not complete "exhaustion … *at the time of filing*, dismissal is mandatory." *Johnson*, 340 F.3d at 627 (emphasis added); *see also Mosley v. Correctional Care Solutions,* 671 F. App'x 401, 402 (8th Cir. 2016) (dismissal for

7

failure to exhaust was proper where prisoner "filed a pertinent grievance that was ultimately exhausted after he initiated this [§ 1983] action").[4]

It is undisputed that Carter did not complete the exhaustion of DR-18-00724 until *five weeks after* he initiated this action. Thus, dismissal of Carter's claims is "mandatory" based on his failure to fully exhaust DR-18-00724 before he initiated this action. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Johnson,* 340 F.3d at 626-28. Accordingly, this action should be dismissed in its entirety, without prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 17)* be GRANTED, and Carter's § 1983 claims against all Defendants be DISMISSED, without prejudice.

DATED this 10th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4]In his initial Complaint, Carter asserted that, in his first attempts to mail his Step Three appeal to the ADC Deputy Director, the mail room "rejected it and kept sending it back," which required him to resubmit it. *Doc. 2 at 4-6.* By the time he filed his Substituted Complaint, on December 18, 2018, Carter acknowledged that he had successfully mailed his Step Three appeal "to the Director for the final step." *Doc. 5 at 5.* Regardless of when the ADC Deputy Director received Carter's Step Three appeal of his grievance, it is undisputed that he reached and decided the appeal *on the merits* on January 8, 2019, without questioning whether Carter's appeal was timely. *Doc. 17, Ex. A-2 at 3.*